UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

COURTNEY L.[1],                    :
                                   :
          Plaintiff,               :
                                   :
v.                                 :     CASE NO.: 2:20-CV-174
                                   :
ANDREW SAUL,                       :
Commissioner of Social Security,   :
                                   :
          Defendant.               :

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Courtney L. ("Courtney" or "Plaintiff") seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Plaintiff's pleadings raise only one issue—asserting the ALJ did not account for any limitations in pace in her RFC nor provide a curative explanation as required by Fourth Circuit precedent. Pl.'s Br. (ECF No. 17). This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, I agree with Plaintiff. Accordingly, this

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

1

report recommends that the final decision of the Commissioner be vacated and the case remanded for additional proceedings.

## I.   PROCEDURAL BACKGROUND

On July 6, 2017, Plaintiff filed an application for supplemental security income ("SSI").[2]   (R. 13, 197-202).   The Commissioner initially denied her application on March 27, 2018, (R. 109-10), and upon reconsideration on August 3, 2018.   (R. 142-43).   Plaintiff then requested an administrative hearing, which was conducted on August 16, 2019.   (R. 58).

On September 9, 2019, an ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act, and denied her claim for disability benefits.   (R. 13-27).   The Appeals Council denied review of the ALJ's decision on February 10, 2020, (R. 1-7), thereby making the ALJ's decision the final decision of the Commissioner.   Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this action, on April 3, 2020, seeking judicial review of the Commissioner's final decision.   This case is now before the Court to resolve the parties' cross-motions for summary judgment.

## II.   FACTUAL BACKGROUND

At the time of the onset of her alleged disability in 2017, Plaintiff was thirty-two years old, a younger individual under Agency rules.   20 C.F.R. § 416.963.   She had obtained a GED and

---

[2] Plaintiff also initially filed a claim for disability insurance benefits ("DIB") under Title II, but subsequently withdrew this claim.   (R. 61, 307).

had no relevant past work experience. (R. 25, 236-37).

## A. Medical and Treatment History[3]

Plaintiff's treatment records reveal that she received mental health treatment at three facilities during the relevant period: Churchland Psychiatric Associates ("Churchland"), Behavioral Health Navigators ("BHN"), and In Harmony Wellness ("Harmony").

### 1. Churchland

Plaintiff saw Psychiatrist Sarah Moore, M.D. ("Moore") at Churchland for medication management from November 2016 until January 2019. (R. 553-61, 941-43, 994-97). Throughout these visits, Moore noted that Plaintiff was alert and had a logical thought process, adequate concentration, and good judgment. See id. Moore also noted that Plaintiff's memory was adequate with the exception of one visit during which Plaintiff demonstrated impaired remote memory. (R. 557). At times Plaintiff was depressed and/or anxious, (R. 553, 555-59, 561, 941-43, 996-97), and at other times demonstrated a euthymic mood, although sometimes still with anxiety, (R. 554, 560, 994-95). Plaintiff frequently had good insight, although this varied. See, e.g., (R. 554, 556-59, 941) (recording instances of "fair" insight). Plaintiff's behavior and speech were generally within normal limits, with the

---

[3] Plaintiff's medical records are voluminous. However, because the claim brought by Plaintiff primarily relates to mental limitations including concentration, persistence, and pace, this section recites only the medical history relevant to this issue.

exception of one session in which she was hypoactive and her speech slow.  (R. 553).

Plaintiff discussed with Dr. Moore her physical pain, (R. 553, 559), living with her parents, (R. 560, 941), and difficulties with finances and sleeping (R. 942-43, 997).  In July 2018, Dr. Moore noted that Plaintiff's dysphoria was a bit better and that she had some energy and was feeling more optimistic.  (R. 996). Plaintiff's sleep had also improved, and she was experiencing increased productivity and stable relationships.  Id.  In September 2018, Plaintiff reported "[h]aving more good days" and being "[a] bit more energetic."  (R. 995).  Plaintiff's last documented session with Dr. Moore occurred in January 2019, during which Plaintiff reported that her mood was "ok" and that she had been sleeping a lot, but that her anxiety was stable.  (R. 994).

### 2.    BHN

Plaintiff's treatment records with BHN begin in January 2017. During these sessions Plaintiff was frequently described as "alert/awake" and fully oriented.  (R. 807, 809, 811, 813, 815, 819, 828, 832, 834, 837, 841, 843, 846, 848, 850, 854, 856, 858, 869, 871, 875, 878, 882, 885, 888, 897, 900, 947, 949, 951, 955, 959). Although sometimes drowsy, she remained oriented.  (R. 817, 824, 826, 839, 891, 894).  Additionally, Plaintiff's memory and attention/concentration were intact.  (R. 807, 809, 811, 813, 815, 817, 819, 824, 826, 828, 832, 834, 837, 839, 841, 843, 846, 848,

4

850, 854, 856, 858, 869, 871, 875, 878, 882, 885, 888, 891, 897, 947, 949, 951, 955, 959). <u>But see</u> (R. 900) (noting Plaintiff's memory and attention were impaired). Plaintiff's thought process was often described as "goal directed," but her thought content could include obsessions/compulsions, (R. 807, 809, 811, 813, 815, 817, 819, 848, 850, 882, 885, 888, 897, 900, 947, 949, 951, 955, 959), poor confidence/esteem, (R. 824, 832, 858, 878), hopelessness, (R. 828, 854, 869, 891, 894, 900), helplessness, (R. 871), or perseverations, (R. 846, 856). <u>But see, e.g.</u>, (R. 811, 813, 815, 826, 834, 848, 850, 869, 882, 888, 891, 894, 897, 900)(exhibiting a tangential thought process). Plaintiff also consistently displayed poor insight, judgment, and impulse control. (R. 807, 809, 811, 813, 815, 817, 819, 824, 826, 828, 832, 834, 837, 839, 841, 843, 846, 848, 850, 854, 856, 858, 869, 871, 875, 878, 882, 885, 888, 897, 900, 947, 949, 951, 955, 959). <u>But see</u> (R. 891, 894) (intact insight/judgment).

During her sessions, Plaintiff discussed her physical pain and the impact it had on her moods and sleep. (R. 809, 813, 817, 826, 828, 848, 850, 871, 875, 885, 959). She also shared difficulties with her family, including those caused by living with them. (R. 811, 824, 832, 834, 837, 839, 841, 846, 848, 854, 875, 878, 885, 888, 891, 897). Other stressors discussed by Plaintiff included family illness, (R. 856, 858), finances, (R. 854, 947, 949, 951), and her boyfriend, (R. 856, 947, 949, 951).

Plaintiff stated that she was stressed about her boyfriend and herself staying with her parents until they could save money or she was approved for SSI. (R. 854). When her boyfriend was approved for subsidized housing, Plaintiff stated that she would take an online class, if necessary, to be on the lease. (R. 955).

### 3. Harmony

Plaintiff also underwent therapy and medication management at Harmony Wellness from August 2018 through July 2019. (R. 1120-75). During these therapy sessions, the social worker consistently noted that Plaintiff was oriented, able to use decision making strategies, able to direct attention, and able to read. (R. 1120-26, 1128-37, 1142-48, 1152-54, 1158-62, 1164-66, 1169-71, 1174-75).

During a medication management appointment on April 17, 2019, Plaintiff reported that she was "almost always depressed" and experienced symptoms including fatigue, isolation, and decreased concentration. (R. 1155). The nurse practitioner noted that Plaintiff's thought process and content, insight, and mood and affect were normal and that Plaintiff was oriented with normal memory, attention span, and concentration. Id. The following month, Plaintiff reported "feeling much better with the new medicine" and her mother stated, "she's 100% different than before we first saw you." (R. 1150). The nurse practitioner again noted Plaintiff had normal thought process and content, insight,

6

orientation, memory, attention span and concentration, and mood and affect.  Id.  In June 2019, Plaintiff informed the nurse practitioner that she was "feeling a little better, but still down a lot." (R. 1167).  In the last medication follow-up in her file, Plaintiff reported continuing depressive and manic symptoms, but showed normal thought process and content, insight, orientation, memory, concentration and attention, and mood and affect.  (R. 1172).

### 4.  Agency Physicians

In connection with her application for benefits, Plaintiff's records were reviewed by two agency physicians, Patricia Bruner, Ph.D. and Joseph Leizer, Ph.D. in March 2018 and August 2018 respectively.  (R. 79-95, 111-28).  Dr. Bruner determined that Plaintiff was moderately limited in concentration, persistence, and pace.  (R. 86).  Specifically, Dr. Bruner found that Plaintiff was moderately limited in her ability to carry out detailed instructions; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length or rest periods. (R. 91-92).  Dr. Bruner concluded that "[t]he claimant's ability to sustain concentration and persistence are limited; however, this would not significantly restrict their ability to function in

a work setting." Id. Dr. Leizer agreed with Dr. Bruner's opinion, finding that Plaintiff was moderately limited in concentration, persistence, and pace, but that this did not significantly impact her ability to perform work. (R. 120, 124-25).

## B. Functional Report

In her functional report, Plaintiff stated that she experienced physical pain; would go days without sleeping during a manic episode; and had difficulty bathing, dressing, and eating, needing reminders to do so. (R. 247-48). She also noted that she did not perform household chores due to "depression, physical pain, or exhaustion." (R. 248-49). Plaintiff listed her hobbies as watching television, reading, and writing, but noted that her mood impacted her ability to read and write. (R. 250). According to Plaintiff, she regularly attended therapy and doctor's appointments but did not otherwise socialize. (R. 250-51). Plaintiff also declared that she could only pay attention for thirty seconds to twenty minutes depending on the task and could not follow spoke instruction very well, but could follow written instructions "fairly well." (R. 251).

## C. The ALJ Hearing

An ALJ hearing was held on August 16, 2019 via videoconference with Plaintiff represented by counsel. (R.58). Plaintiff's stepfather was also present. Id. During the hearing Plaintiff testified that she lived with her parents who "help[ed] [her] with

everything." (R. 62). She also stated that she did not do much on a typical day and would mainly sleep, although there were times when she could not sleep. (R. 64). Plaintiff explained that there had been a short period where she was able to take walks before she began experiencing hallucinations. (R. 65). Although the hallucinations are controlled by medication, Plaintiff reported that her low energy prevents her from "function[ing] normally." Id. Plaintiff reported that she did not help with chores and that she did not have any hobbies recently, as she could not focus long enough to read. (R. 65).

The Plaintiff's stepfather also testified that Plaintiff's behavior was "wildly unpredictable" and that she would fluctuate from being tired, withdrawn, and not eating to animated. (R. 69-72). He also described how Plaintiff did not finish activities, would go two to three weeks without changing clothes, and had difficulty remembering to take her medications. (R. 72-74).

During the hearing, the ALJ also considered the testimony of a Vocational Expert ("VE"). The ALJ first informed the VE that Plaintiff had no relevant work history. (R.75). The ALJ then posed a hypothetical involving a person of Plaintiff's age, education, and work experience, who was capable of light work that involved lifting and carrying ten pounds frequently and twenty pounds occasionally; sitting for six hours or standing or walking for a total of four hours in the eight-hour workday; occasionally

engaging in postural activities, such as climbing stairs and ramps; avoiding a hazardous work environment, including climbing ladders or scaffolds; understanding, remembering, and carrying out simple instructions; making simple work related decisions; occasionally interacting with and responding appropriately to co-workers, supervisors, and the public; responding appropriately to usual work situations and changes in routine; and performing simple, routine, and repetitive work. (R. 76). In response to which the VE stated that such a person would be able to perform unskilled, light jobs, such as office helper, marker, folder. Id. The VE also testified if the person had difficulty sustaining her focus such that she was off task for fifteen to twenty percent of the time that would preclude all employment. (R.77). Lastly, the VE stated that her descriptions of employment were consistent with the Dictionary of Occupational Titles ("DOT") with the exception of the time off task, which was based on observation and experience. Id.

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

10

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)).  It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance.  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays, 907 F.2d at 1456).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Id. (citation omitted).  The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed.  Perales, 402 U.S. at 390 (quoting 42 U.S.C. § 405(g)).  Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law.  Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.  ANALYSIS

Plaintiff's brief focuses on a single error in the ALJ's decision that she argues warrants remand.  Plaintiff asserts that

11

the Commissioner did not fully account for her moderate limitations in concentration, persistence and pace found at step three of the disability inquiry, as required under Mascio v. Colvin, 730 F.3d 632 (4th Cir. 2015).  As explained below, this report agrees that the ALJ erred in applying Mascio.  It therefore concludes that remand is warranted, and recommends that the Court grant Plaintiff's motion, vacate the final decision of the Commissioner, and remand for further administrative proceedings.

A.    Framework for SSA Disability Evaluation

Title XVI of the Act provides SSI benefits to "financially needy individuals who are aged, blind, or disabled regardless of their insured status."  Bowen v. Galbreath, 485 U.S. 74, 76 (1988) (citing 42 U.S.C. § 1382(a)).  As relevant here, the Act defines "disability" as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A)); accord 20 C.F.R. § 416.905(a).  An impairment renders an individual disabled only if it is so severe as to prevent the person from engaging in his or her prior work or any other substantial gainful activity that exists in the national economy.  See 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

The regulations promulgated by the Social Security

12

Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. <u>Pass v. Chater</u>, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing <u>Hunter v. Sullivan</u>, 993 F.2d 31, 35 (4th Cir. 1992)).

When conducting this five-step analysis, the ALJ must

consider: (1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

**B.   The ALJ's Decision**

The ALJ first found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 6, 2017.[4] (R. 16). Next, the ALJ identified severe impairments of bipolar, anxiety, and post-traumatic stress disorders; agoraphobia; epilepsy; diabetes mellitus; migraine headaches; pseudotumor cerebri (intracranial hypertension); degenerative disk disease; and obesity. Id. At step three, the ALJ noted that Plaintiff had "moderate" limitations in concentration, persistence, and pace, but determined that Plaintiff's combination of impairments did not meet one of the listed impairments in Appendix 1. (R. 17-20). The ALJ then set out Plaintiff's RFC stating that she had the capacity to perform light work and:

> [C]an lift/carry up to 20 pounds occasionally and 10 pounds

---

[4] The ALJ's opinion lists both July 6, 2017 and July 7, 2016 as alleged onset dates. However, the record shows that Plaintiff protectively filed for benefits on July 6, 2017 and, during her hearing, amended her alleged onset date of disability to July 6, 2017. (R. 13, 16, 61).

14

frequently; sit for six hours in an eight-hour workday; stand and/or walk for four hours in an eight-hour workday; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/scaffolds, work around unprotected heights, or operate dangerous machinery, or be exposed to excessive vibrations. She retains the use of her upper extremities/hands for continuous reaching in front and laterally, handling, fingering, and feeling. She can also understand, remember, and carry simple instructions; make simple work-related decisions; occasionally interact with and respond appropriately to co-workers, supervisors, and the public; and respond appropriately to usual work situations and changes in simple, routine, and repetitive work.

(R. 20). Finally, at step five, the ALJ identified jobs which exist in significant numbers in the national economy, which Plaintiff could perform. (R. 26). He therefore entered a finding that Plaintiff was not disabled. Id.

**C.   The ALJ's RFC Did Not Appropriately Account for Plaintiff's Moderate Impairments in Concentration, Persistence, and Pace.**

If an ALJ's five-step analysis reaches step four, the ALJ will first make a finding on the claimant's RFC using all relevant evidence, medical and otherwise. 20 C.F.R. §§ 416.920(e), 416.945. A claimant's RFC is the most an individual can do despite the physical and mental limitations on his or her ability to do work. Lewis v. Berryhill, 858 F.3d 858, 861-62 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). Residual capacities "must be expressed in terms of work-related functions" when assessing a claimant's RFC. SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).

Plaintiff does not address in detail the ALJ's evaluation of

the medical evidence in the record or his conclusions regarding whether Plaintiff's mental impairments met a Listing.[5]   Rather, Plaintiff asserts that, contrary to the Fourth Circuit's opinion in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), "even though the ALJ found 'moderate' impairment in [concentration, persistence, and pace], he did not address pace or provide a pace limitation in the RFC." Pl.'s Br. (ECF No. 17, at 5).   Therefore, Plaintiff's case must be remanded for further review.

As in this case, the claimant in Mascio alleged a mental impairment which resulted in work related functional limitations. Mascio v. Colvin, 780 F.3d 632, 633 (4th Cir. 2015).   At step three, like here, the ALJ in Mascio concluded that the claimant was moderately limited in concentration, persistence, and pace. The ALJ's RFC in Mascio purported to accommodate these limitations by limiting the claimant to only unskilled work.   Id. at 635.   But the Fourth Circuit ordered remand after finding the ALJ's opinion "sorely lacking" in the required analysis under SSR 96-8p.   Id. at 636-37.   The court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis."   Id. at 636.   However, it held that when the ALJ's opinion "fails to assess a claimant's capacity to perform relevant

---

[5] Plaintiff does state, "[t]here are other reversible errors that Plaintiff may argue in this appeal, such as an inappropriate rejection of the opinion of the treating psychiatrist, Dr. Sarah Moore, and an inappropriate analysis regarding whether Listing 12.04 is met," but does not address these issues in detail. Pl.'s Br. (ECF No. 17, at 8).

functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review," remand is appropriate. Id. (internal citations and quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

Since Mascio, lower courts and the Fourth Circuit itself have wrestled with the contours of an appropriately tailored RFC. Some cases address a claimant's limitation in pace explicitly by reference to the pace of work. See, e.g., Fowler v. Colvin, No. 3:14-cv-855, 2015 WL 8488971 (E.D. Va. Oct. 13, 2015) (finding ALJ accounted for limitations in concentration, persistence, and pace with an RFC that limited plaintiff to simple, routine, and repetitive tasks, a low stress work environment, only occasional interactions with the public, and "work that required no more than two hours at a time without at least a brief break"), R&R adopted, 2015 WL 8484443 (E.D. Va. Dec. 9, 2015); Hunter v. Berryhill, No. 3:17-cv-112, 2018 WL 310138, at *13 (E.D. Va. Jan. 5, 2018) (finding ALJ complied with Mascio by limiting claimant to "simple, routine tasks, not at production rate, where she has no more than occasional changes in routine work setting, occasional contact with supervisors . . . and no interaction with the public");

Eastwood v. Colvin, No. 3:15-cv-156, 2016 WL 805709, at *4 (E.D. Va. Feb. 12, 2016) (holding that the ALJ accounted for claimant's concentration through "little independent decision-making," persistence through "few workplace changes," and pace through jobs "not performed at an assembly-line pace"), R&R adopted, 2016 WL 881123.

After Mascio, pace limits were also sometimes addressed by restricting the claimant to "non-production work," but the Fourth Circuit has since held that terms like "production rate" or "demand pace" were too vague standing alone to satisfy the ALJ's obligation to create a "logical bridge" between the evidence and the RFC limits. Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019); see also Xavier v. Saul, 2020 WL 1015816, at *18 (E.D. Va. Mar. 2, 2020) ("[F]ind[ing] that the ALJ did not sufficiently define the limitation 'no production rate for pace of work'" preventing "the court from meaningfully assessing whether a 'logical bridge' exists between the assessment and the evidence in the record"). But see Carol F. v. Saul, No. 2:19cv155, 2020 WL 3966829, at *11-12 (E.D. Va. June 9, 2020) (finding that ALJ's determination that the plaintiff could "sustain and attend to tasks throughout a normal workday and work week," provided she receives "customary breaks" "appropriately accounted for plaintiff's ability to stay on task"), R&R adopted, 2020 WL 3960579 (E.D. Va. July 13, 2020); Sizemore v. Berryhill, 878 F.3d 72, 80-81 (4th Cir. 2017) (finding

18

that the ALJ's RFC, which included "non-production" pace was adequately explained).

If no RFC restriction is directed to a claimant's pace limitation, the ALJ can comply with Mascio by explaining why no pace restriction was required based on the specific details of claimant's condition and limitations.   The standard does not require exhaustive detail, but a reviewing court must be able to ascertain how an ALJ reached his or her decision. See Dennis v. Berryhill, 362 F. Supp. 3d 303, 309 (W.D.N.C. 2019) (ALJ must resolve evidentiary conflicts and support narrative discussion with citations to supporting evidence).   The ALJ's opinion cannot leave the reviewing court to "guess about how the ALJ arrived at his conclusions."  Mascio, 780 F.3d at 637.

Here, the ALJ determined at step three that Plaintiff experiences moderate difficulties in concentration, persistence, and pace. (R. 19).  The ALJ based this determination on Plaintiff's statements that her impairments affected her ability to concentrate and complete tasks, and that she could pay attention for thirty seconds to twenty minutes.  Id.  However, Plaintiff reported that she watched television, read, and wrote.  Id. Plaintiff's mental status examinations also showed occasions where Plaintiff "exhibited drowsiness, slow speech, tangential thought process, impaired impulse control, and hypoactive motor behavior,"

but at other times she was "alert, oriented, and exhibited intact attention and concentration." Id.

The ALJ then determined that Plaintiff had the RFC to perform light work with certain physical, environmental, and mental limitations including understanding, remembering, and carrying out simple instructions; making simple work related decisions; occasionally interacting with and responding appropriately to co-workers, supervisors, and the public; responding appropriately to usual work situations and changes in routine; and performing simple, routine, and repetitive work. (R. 20).

None of these restrictions are specifically directed to Plaintiff's moderate pace limitations. The Commissioner apparently concedes this fact, but asserts that despite not addressing pace, "the ALJ formulated an RFC that not only incorporated the kind of tasks and degree of social interaction prescribed by Drs. Bruner and Leizer, but further limited Plaintiff to understanding, remembering, and carrying out simple instructions and making simple work-related decisions." Def.'s Br. (ECF No. 19, at 17). The Commissioner then argues that this "holistic" RFC is sufficient to address moderate limitations in concentration, persistence, or pace.[6]  Id.  But after reviewing

---

[6] The Commissioner also argues that within the "broad functional area" of concentration, persistence, and pace, "a claimant can have a limitation in only one component, in two, or in all three, but the ALJ makes only a single overall rating in the broad area. Def.'s Br. (ECF No. 19, at 12) (citing first 20 C.F.R. § 416.920a(c)(3); then Rauch v. Comm'r of Soc. Sec., No. 1:18-cv-408,

the ALJ's analysis and the medical record in detail, I do not find the type of explanation necessary to support the absence of an explicit restriction addressed to pace or persistence.

Mascio did not create any per se rule regarding how the RFC needed to accommodate particular functional limitations. Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020); see also Carol F. v. Saul, No. 2:19cv155, 2020 WL 3966829, at *9 (E.D. Va. June 9, 2020), R&R adopted, 2020 WL 3960579 (E.D. Va. July 13, 2020); Gandee v. Saul, No. 4:19cv74, 2020 WL 5792636, at *9 (E.D. Va. June 8, 2020), R&R adopted, 2020 WL 5775273 (E.D. Va. Sept. 28, 2020). But, as the Fourth Circuit noted, an ALJ cannot account "for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question [to the VE] to simple, routine tasks or unskilled work." Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) (citing Witschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011). After all, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter would account for a claimant's limitation in concentration, persistence or pace." Mascio, 780 F.3d at 638; see also Wedwick v. Colvin, No. 2:14cv267, 2015 WL 4744389, at

---

2019 WL 2996511, at *3 (W.D. Mich. June 20, 2019), R&R adopted, 2019 WL 2994506 (July 9, 2019)). Nonetheless, pursuant to the Fourth Circuit's decision in Mascio, an ALJ must either account for moderate limitations in concentration, persistence, or pace, in a claimant's RFC or explain why the RFC does not require such limitations. Mascio v. Colvin, 730 F.3d 632, 638 (4th Cir. 2015). The mere fact that concentration, persistence, and pace fall within a "broad functional area" does not change the required analysis.

*22-23 (E.D. Va. Aug. 7, 2015) (noting that "a limitation in concentration, persistence and pace correlates to a limitation in ability to stay on task" and that whether a claimant can perform simple tasks "does not address [the claimant's] ability to stay on task for an entire day"). Thus, the Commissioner's assertion that the inclusion of limitations such as understanding, remembering, and carrying out simple instructions; making simple work-related decisions; and responding appropriately to changes in situation and routine provide a "holistic" RFC that overcomes the absence of any restriction on pace is simply not correct. These various restrictions are all directed to other mental limitations—which frequently, but not always, accompany a pace-related limit. See Ollis v. Berryhill, No. 2:17cv33, 2017 WL 7167171, at *12 (E.D. Va. Dec. 18, 2017).

Likewise, the fact that the RFC also limited the Plaintiff's degree of social interaction does not account for pace or persistence. Like limiting a person to simple, routine tasks or unskilled work, limiting an individual's social interaction addresses something other than the ability to stay on task—namely, social functioning. See, e.g., Handy v. Comm'r Soc. Sec. Admin., No. SAG-09-166, 2015 WL 9302972, at *3 (D. Md. Dec. 22, 2015) (noting that imposing an RFC restriction to "simple, routine, repetitive tasks involving short, simple instructions in an environment with few workplace changes, no public contact, and

only brief, infrequent contact with supervisors and coworkers not requiring teamwork or collaboration" addresses social and cognitive functioning, not concentration, persistence, or pace); Taylor v. Colvin, No. 7:14CV000616, 2015 WL 7308680, at *1-2 (W.D. Va. Nov. 19, 2015) (remanding " a case in which plaintiff alleged disability on the basis of depression, and in which much of the medical evidence documents treatment of what was diagnosed as major depressive disorder by the consultative psychologist, the plaintiffs [sic] residual functional capacity, as found by the Law Judge, makes reference only to limitations to unskilled work not involving more than occasional interactions with the public").

Because the RFC does not address Plaintiff's moderate pace limitation, the question is whether the ALJ explained why Plaintiff retained the ability to work despite this limitation. Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) ("[A]n 'ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC." (quoting Mascio, 780 F.3d at 638)). This inquiry requires a reviewing court to consider both the analysis of medical evidence in the record and the resulting limitations. Sizemore v. Berryhill, 878 F.3d 72, 80-81 (4th Cir. 2017) (rejecting Mascio argument and affirming Commissioner where ALJ's detailed medical findings provided substantial support for the RFC limitations); see also Packett v. Berryhill, No. 3:17cv677,

2018 WL 6441529, at *17-18 (E.D. Va. Oct. 16, 2018) (holding that the ALJ complied with Mascio where the "ALJ properly explained why his findings regarding Plaintiff's moderate limitations in concentration, persistence and pace did not translate into RFC limitations beyond understanding, remembering, and carrying out short, simple instructions consistent with the ability to perform unskilled work and limiting her to occasional interaction with supervisors and co-workers, but no interaction with the public"), R&R adopted, 2018 WL 6440875 (E.D. Va. Dec. 7, 2018).

In this case, the Commissioner's briefing includes a detailed explanation of various medical records which might support the finding spelled out in Plaintiff's RFC, which omits any pace restriction. He asserts that "[t]he ALJ discussed Plaintiff's longitudinal mental health record, the opinion evidence, the testimony, her subjective reporting, and Plaintiff's background and activities" and that unlike in Mascio, "the Court is not left to guess at the ALJ's decision-making process because he explained how the evidence established that despite her limitations, Plaintiff remained capable of performing the extremely detailed work in the RFC." Def.'s Br. (ECF No. 19, at 18). But the link between the ALJ's citation to the medical evidence and the RFC's failure to address moderate pace limitations is absent from the ALJ's analysis.

When determining Plaintiff's RFC, the ALJ heard witness testimony from Plaintiff and her stepfather. The ALJ acknowledged Plaintiff's testimony that she does not do much on a typical day and frequently sleeps a lot. (R. 20). He also noted that due to bipolar disorder Plaintiff "experiences high moods randomly" and that "[t]hese high moods occur approximately 15 to 20 percent of the time and makes it difficult for her to sleep and concentrate." (R. 21). The ALJ also acknowledged Plaintiff's stepfather's testimony, noting that "[h]e testified that her mood swings from agoraphobic to being so animated and talking so fast that he could not follow what she was saying." Id.

Despite this testimony and the Plaintiff's reported symptoms including depression, anxiety, panic attacks, racing thoughts, auditory hallucinations, nightmares, anhedonia, low motivation, sleep difficulties, and self-harming, the ALJ pointed to positive mental status examinations—showing that the Plaintiff was "alert, oriented, and exhibited normal behavior, a neat appearance, adequate hygiene and grooming, intact attention and concentration, normal thought content, logical thought process, good eye contact, intact recent and remote memory, a normal mood and affect, and good judgment and insight"—and comments by the Plaintiff that her bipolar symptoms were well controlled and that her medication was working. (R. 22-23). The ALJ did, however, also note that there were occasions where Plaintiff "exhibited a depressed mood, flat

affect, drowsiness, and abnormal recent and remote memory, slow speech, poor insight, irritability, tangential thought process, impaired judgment[,] poor impulse control, obsessive and compulsive thought content, and hypoactive motor behavior."  (R. 23).

The ALJ also found the opinions of the non-examining, state agency, psychological consultants, Drs. Bruner and Leizer, "persuasive."[7]  (R. 24).  Both agency consultants determined that Plaintiff had moderate limitations in concentration, persistence, and pace, but that the Plaintiff was capable of performing simple, repetitive tasks in an environment that did not require frequent interaction with the public or co-workers.  Id.  The ALJ noted that these findings were well-supported and consistent with the record.  Id.

In contrast to the agency consultants, the ALJ found large portions of Dr. Moore's opinion unpersuasive.  Rather than moderate limitations, Dr. Moore opined that:

> [T]he claimant had marked limitations in maintaining concentration/focus, performing at a consistent pace, responding to changes in routine, and dealing with normal work stress.  She further opined that the claimant had moderate limitations in dealing with co-workers, supervisors,

---

[7] "Effective March 27, 2017, the SSA rescinded § 404.1527 and § 416.927 and implemented a new rule governing the consideration of medical opinions." Parsons v. Berryhill, No. 3:18cv1107, 2019 WL 2252023, at *10 n.3 (S.D.W. Va. May 2, 2019) (citing 20 C.F.R. § 404.1520c (2017)).  "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them based upon the two most important factors of supportability and consistency." Id. (citing 20 C.F.R. §§ 404.1520c(a), (c)(1)-(2)).

and the general public, as well a mild limitation in carrying out short/simple instructions. Additionally, Dr. Moore opined that the claimant would be absent from work for four or more days each month.

(R. 25). The ALJ noted that this opinion lacked support and was inconsistent with the record—notably the mental status examinations—which the ALJ found "did not support limitations beyond moderate in maintaining concentration, persistence, or pace and adapting or managing herself." Id. However, the ALJ found Dr. Moore's limitations regarding simple instructions and limited social interaction to be consistent with the record and thus persuasive. Id.

Thus, rather than explain why no pace-related accommodation was required, the ALJ's extensive review of the medical evidence repeatedly acknowledged Plaintiff's moderate difficulties in concentration, persistence, and pace. (R. 19, 21, 24-25). The ALJ cited to mental status examinations, many of which were "optimal" and showed Plaintiff to be alert, oriented, adequately groomed, and with normal attention and concentration, thought process and content, eye contact, memory, mood and affect, and judgment and insight, as well as two comments by the Plaintiff that her bipolar symptoms were under control and her medication effective. (R. 22-23). But the mere presence of these positive examinations does not negate the fact that, as the ALJ recognized, Plaintiff also experienced moderate functional limitations in

27

concentration, persistence, and pace. See Ollis v. Berryhill, No. 2:17cv33, 2017 WL 7167171, at *13 (E.D. Va. Dec. 18, 2017) (concluding that opinion evidence indicates that favorable mental status exams are consistent with the moderate pace limitations which the ALJ found and did not excuse the failure to accommodate them in the RFC). While some mental status examinations performed during a therapy session revealed intact attentions and concentration, the ALJ does not explain how these establish that Plaintiff is capable of full time work without an accommodation directed to the pace of that work. See Mascio v. Colvin, 730 F.3d 632, 636-37 (4th Cir. 2015) (finding the ALJ's opinion "sorely lacking" in its analysis where the ALJ found that the claimant could perform certain activities, but nothing about the claimant's ability to perform them for a full workday); Ollis, 2017 WL 7167171, at *13 (noting that the presence of favorable mental status examinations did "not preclude the existence of the negative functional limitations which the ALJ found established by the record" and these status observations were insufficient on their own to establish that the plaintiff could work full-time on a weekly basis), R&R adopted, 2018 WL 627386 (E.D. Va. Jan. 30, 2018).

Additionally, despite relying on the determinations of the agency consultants that Plaintiff was capable of performing simple, repetitive tasks in an environment devoid of frequent

interaction with the public or co-workers, the ALJ did not explain how he reconciled their conclusions, or his own, about Plaintiff's ability to perform such tasks with Plaintiff's moderate limitations in pace.  See (R. 24) ("These findings are . . . generally consistent with the longitudinal record of evidence, including . . . optimal/non-optimal mental status examination findings and the claimant's treatment with medication and counseling.").  This is particularly problematic, because, as the ALJ noted, Plaintiff's manic phases "occur approximately 15 to 20 percent of the time and make[] it difficult for her to sleep and concentrate." (R. 21).  And when the ALJ presented a hypothetical of an individual who was off task 15 to 20 the VE testified that this would preclude all employment.  (R.77).

Though more detailed in its various mental restrictions, the RFC in this case ultimately mirrors Mascio, where the court was unable to determine how the ALJ's RFC addressed the claimant's ability to concentrate, persist, and maintain pace throughout the work week.  Mascio v. Colvin, 730 F.3d 632, 637 (4th Cir. 2015) (holding that the ALJ's opinion cannot leave the reviewing court to "guess about how the ALJ arrived at his conclusions").  The limitations offered by the ALJ, like those in Mascio, do not address Plaintiff's moderate pace limitation, which the ALJ identified.  Though more detailed, each of the restrictions the RFC did impose due to her mental impairments is directed toward

the ability to perform simple repetitive tasks with limited interruption.  But none accommodate her apparently limited ability to stay on task and persist throughout the workday without an explicit pace limit.  As a result, the ALJ's RFC was not supported by substantial evidence, and this report recommends that the case be remanded for reconsideration.  On remand, the ALJ will have an opportunity to reevaluate the RFC, to impose additional limitations which may or may not render Courtney disabled.  Alternatively, the ALJ may explain how Plaintiff could perform light work with the limitations already described despite her recognized limitations in concentration, persistence, and pace.

## V.    RECOMMENDATION

For the foregoing reasons, this Report recommends that the Court GRANT Plaintiff's Motion for Summary Judgment (ECF No. 17), DENY the Commissioner's Motion for Summary Judgment (ECF No. 19), and VACATE the final decision of the Commissioner and REMAND the case for reconsideration.

## VI.    REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing

of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.   A district judge shall make a _de novo_ determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations.  _Thomas v. Arn_, 474 U.S. 140 (1985); _Carr v. Hutto_, 737 F.2d 433 (4th Cir. 1984); _United States v. Schronce_, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
May 5, 2021